# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Hannah M. Ardrey, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with Homeland Security Investigations (HSI) and have been since February 2023. I have attended classes and courses conducted by federal agencies regarding the importation, transportation, and distribution of illegal drugs. I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to assuming my position with HSI, I was employed as a Patrol Officer with the Breckenridge Police Department in Breckenridge, Colorado for approximately three years. During my time as a Patrol Officer, I was trained to investigate many types of state violations of law to include motor vehicle and criminal statutes.

2. Through investigations and training, I am knowledgeable about state and federal drug laws and I have participated in a number of drug trafficking, money laundering, and organized crime investigations that have resulted in the arrest and conviction of numerous members of several different international and domestic Drug Trafficking Organizations for violations of state and federal drug laws, and the seizure of illegal drugs, U.S. currency, and forfeitable assets.

3. My duties as a Special Agent for HSI include, but are not limited to, investigating violations of the Immigration and Nationality Act, United States customs laws, and the Federal Criminal Code. I have received training on how to investigate and enforce violations of criminal law, to include narcotics and firearms trafficking.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other sworn law enforcement officers and/or witnesses.

This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all my knowledge about this matter.

### PROBABLE CAUSE

5. I am currently investigating Jamell Richard SCOTT, (DOB: 06/XX/1978) for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), possession with intent to distribute cocaine and fentanyl. SCOTT is currently an inmate at the Richmond City Jail.

6. On September 13, 2024, HSI special agents and members of the Virginia State Police (collectively, "the investigative team") executed a federal search warrant at SCOTT's known residence, Room 124 of the Midlothian Inn, 6523 Midlothian Turnpike, Richmond, Virginia, 23225, in furtherance of an ongoing narcotics distribution investigation (3:24-sw-181).

7. The search warrant was executed at approximately 6:05 a.m. EST, without incident. Moments before the VSP tactical team began to execute the search warrant, members of the investigative team conducting surveillance watched SCOTT leave Room 124. SCOTT was detained in the parking lot of the Midlothian Inn. SCOTT's girlfriend was inside Room 124 when law enforcement entered. She was detained and later arrested on outstanding warrants.

8. Room 124 was searched by law enforcement personnel, pursuant to the warrant. On the left side of the bed was a pair of men's jeans and an iPhone that was logged into the iCloud account of "Jamell Scott." In the drawer of left bedside table, the investigative team found a Louis Vuitton jewelry pouch. Inside the pouch was a baggie of suspected cocaine (approximately 28 grams) and a baggie of suspected fentanyl (approximately 28 grams). Also inside the drawer of the left bedside table was a baggie of suspected crack cocaine (approximately 42 grams), a small baggie of suspected psilocybin mushrooms (approximately 4 grams), and a box of unused fold-top

sandwich bags. On top of the bedside table—in plain view—was a digital scale, a grinder that contained suspected fentanyl, and a small baggie of suspected cocaine (approximately 3.5 grams). There were also clean and packaged needles and multiple packages of Narcan found in the room. The investigative team also found multiple cellular phones and later obtained federal search warrants for the seven cellular phones attributable to SCOTT (3:24-sw-212). Finally, the investigative team seized approximately $1,600 in United States currency.

9. SCOTT was arrested and transported to the Richmond City Jail.

10. The suspected controlled substances were submitted to the Virginia Department of Forensic Sciences Laboratory (DFS Lab). The DFS Lab determined that the recovered narcotics consisted of (1) 28.5 grams of tan powder containing heroin, fentanyl, and xylazine (from the Louis Vuitton pouch in the left bedside table drawer); (2) two plastic bags containing white solid material with a total weight of 42.03 grams of substance containing cocaine (baggie from the left bedside table drawer and small baggie from on top of the table); (3) 25.14 grams of white chunky powder containing cocaine (from the Louis Vuitton pouch); (4) 7.94 grams of powder containing fentanyl and xylazine (from the grinder on top of the bedside table); and (5) 3.51 grams of mushrooms containing psilocyn (from the left bedside table drawer).

11. In my training and experience, these quantities of drugs indicate distribution and not personal use. Moreover, the presence of the different kinds of controlled substances further indicates distribution. Additionally, drug distributors typically use digital scales and baggies, like those found in SCOTT's room, to package their larger quantities of drugs for resale in smaller units. Finally, the presence of multiple cellular phones and over $1,600 in cash further supports that SCOTT was trafficking.

12. The investigative team saw SCOTT at the Midlothian Inn on multiple occasions in the weeks leading up to the search warrant. Surveillance units watched SCOTT enter Room 124 using a key and leave Room 124 on multiple occasions. For example, On August 25, 2024, surveillance units watched SCOTT leave Room 124, get into the front passenger seat of a car, get out carrying a black plastic bag, and re-enter Room 124. On August 27, 2024, the investigative team saw SCOTT enter Room 124 and, within 30 minutes of his return, the investigative team saw four different individuals approach Room 124, knock on the door, enter the room for a very short period of time, and leave. In my training and experience, this behavior was consistent with hand-to-hand drug transactions.

## CONCLUSION

13. Based on the aforementioned information, I respectfully submit there is probable cause to charge SCOTT for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), possession with intent to distribute cocaine and fentanyl.

Respectfully submitted,

Hannah M. Ardrey
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me on
November 13, 2024, in Richmond, Virginia.

/s/

Hon. Summer L. Speight
United States Magistrate Judge
Eastern District of Virginia